**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHRISTINE L. COLLIER and DENNIS COLLIER**

Plaintiff,

VERSUS

**ETHICON Inc. and JOHNSON AND JOHNSON**

Defendants.

**Civil Action No.: 2:22-cv-00168**

**Judge: Eldon E. Fallon**

**Magistrate Judge: Michael B. North**

**MEMORANDUM IN SUPPORT OF MOTION TO APPORTION ATTORNEY FEES AND TO DEPOSIT FEES INTO THE REGISTRY OF THE COURT**

**SUMMARY OF THE ARGUMENT**

The Intervenors, Louis L. Gertler, Helen H. Babin and the Gertler Law Firm vigorously represented the Plaintiffs, Christine and Dennis Collier, from December 17, 2021, to March 10, 2023. The legal services rendered by the Gertler Firm included the assertion of strong claims under the LPLA against the defendants, Ethicon Endo-Surgery, Inc. and Ethicon Endo-Surgery, LLC, for failure to warn, manufacturing defect, and design defect for the Echelon 29mm Circular Powered Stapler.

Additionally, the Gertler Firm is solely responsible for successfully opposing a 30 (b)(6) Motion to Dismiss, the ***only*** substantive motion practice in this case, and which significantly contributed to the resolution of the case by settlement.

The Retainer Agreement between the Blair Firm and the Gertler Firm mandates a 50-50 split of the 40% contingency attorney fee. Pursuant to the *Saucier* case, and related jurisprudence, the Gertler Firm has well earned its contract fee.

## BACKGROUND FACTS

Plaintiff's counsel, Robin Blair, a Mississippi attorney, sought out the Gertler Firm and Louis L. Gertler and Helen H. Babin to be co-counsel because of their experience in product liability litigation in this Honorable Court.[1] Pursuant to the Retainer Agreement, **Ex. 2**, the Colliers retained both the Blair Law Office and the Gertler Law Firm. The agreement provided for a 40% contingency fee, to be split equally between the Blair firm and the Gertler firm. The agreement also required that the two firms equally split costs.

The two firms agreed to split the tasks on the case to assign liability and experts to the Gertler firm, and the medicals and fact witnesses, including treating physicians, to the Blair Firm.[2] Further, because the Colliers had been clients of the Blair firm for some time, Robin Blair maintained the direct and controlling relationship with the Colliers. Louis Gertler and Helen Babin met with Christine Collier once and had one conference call with her. Mrs. Collier's knowledge of the status of the case and the work of the Gertler Firm came from her counsel, Robin Blair.

The Intervenors *singularly* researched and drafted:

1. the Complaint, (Rec.Doc #1) [3] and see, **Ex. 2**, Gertler # 004-006
2. Amending Complaint, (Rec. Doc # 17) and **Ex. 2,** Gertler #008
3. Second Amending Complaint (Rec. Doc# 40) and **Ex. 2** Gertler #014-016
4. Louis Gertler, Helen Babin and the Gertler Firm also successfully opposed the defendants' Motion to Dismiss, establishing the record of a strong, multi-claim, product liability case. (Rec. Docs 26, 29,32,35,37) and **Ex. 2** Gertler #009)

[1] See **Ex.2. Gertler 004,** ("Also, if you and Louis would handle the legal claims under Louisiana law, that would be great.")

[2] See **Ex. 2, Gertler # 009, ("**as you know, we split the tasks on the case to assign liability and experts to the Gertler Firm and the medicals and fact witnesses, including treating surgeons and other physicians, to your firm.")

[3] **Ex. 3,** Docket Sheet

5. The Intervenors drafted the initial discovery to Ethicon resulting in the production of over 3000 pages of evidence. They coordinated with defense counsel on the Protective Order. **Ex. 2,** Gertler #s 26,29,32,35,37.
6. The Intervenors objected in writing to many of the defendants' discovery responses and resolved those disputes with defendants' counsel. **Ex. 2,** Gertler #s 033-048.
7. The Intervenors researched and retained Dr. Morton Jensen as Plaintiffs' liability expert. **Ex. 2**, Gertler #s 10-12. It is likely that Dr. Jensen's initial expert report in this case was supported by the evidence the Intervenors obtained in their discovery.

On March 10, 2023, Louis Gertler, Helen Babin and the Gertler Firm were discharged without cause. Robin Blair sent an email attaching a handwritten note from the Colliers stating they had "not been satisfied" with the representation for some time. An email was sent to Robin Blair requesting specific cause, since no complaints had previously been expressed. She did not respond to the email nor to a follow-up phone call. **Ex. 2,** Gertler # 49-52.

## LEGAL STANDARD

The Supreme Court of Louisiana has exclusive authority to regulate the practice of law in this state. La. Const. art. V, § 5(B); *Mire v. City of Lake Charles*, 540 So.2d 950 (La.1989). This broad grant of regulatory power includes the responsibility to exert control by adjudicatory means of individual cases as they arise, including those relative to discharge of counsel and regulation of fees, whether by contingency contract or otherwise. *Saucier v. Hayes Dairy Products, Inc.,* 373 So.2d 102, 118 (La.1979); *Langley v. Norton*, 2003 WL 21991643 (E.D. LA. Aug. 19, 2003): *see also, Lynn Melancon v. Great Southern Dredging,* 2016 WL 3851581 (E.D. La. June 22, 2015).

In *Saucier,* the Louisiana Supreme Court held that in a case involving two attorneys with

separate contingency fee contracts with the client, one attorney having been discharged without cause and the subsequent attorney having brought the case to judgment or settlement, the contingency fee is to be apportioned according to the services performed by each attorney. *Saucier, 373 So.2d at 118.* The proportionate services are to be determined according to the factors contained in Rule 1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved, and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

A trial court's apportionment of a contingency fee according to these "Saucier

factors" is a factual determination and as such may not be disturbed absent manifest error. *Stobart v. State, Through DOTD,* 617 So.2d 880 (La.1993); *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 494 (La.App. 4 Cir.1997). Thus, the amount prescribed in the contingency fee contract is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. *Id.*

In *O'Rourke v. Cairns,* 683 So.2d 697, 700 (La.1996), the Louisiana Supreme Court reaffirmed the factors and policies articulated in *Saucier*. But the court modified the analysis for cases involving attorneys who have been discharged for cause. The court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *O'Rourke,* 683 So.2d at 704. The court should then allocate the fee between or among discharged and subsequent counsel based upon the Saucier factors. Id. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation. *Id.*

**ANALYSIS**

Applying the *Saucier* factors 1-3: This was a difficult product liability case, involving a medical device that had not been recalled, although numerous "Maude" complaints regarding failure during use had been filed. While the case did not prevent the firm from accepting other work, it was time-consuming for both the attorneys and staff. It is estimated that over the 13 months of representation, more than 900 hours was expended on the case.

Applying the Saucier factors 4-8: The 40% contingency fee is customary in this jurisdiction. Although the Intervenors do not yet know the value of the settlement, it is clear from the docket that the legal services provided by the Gertler Firm significantly contributed to its resolution. The docket report reveals that the 16 months following the Intervenor's discharge was a merry-go-round of discovery disputes, motions to compel, motions for protective orders, and ***two*** continuances of the trial date. There were no dispositive motions, no 30(b)(6) depositions, no expert reports beyond Dr. Jensen's preliminary report. It is difficult to find anything in the docket from March 2023 to August 2024 that substantially contributed to the outcome in this case.

Louis Gertler and Helen Babin are experienced Louisiana product liability attorneys capable of handling the difficult issues in the case. Since graduating from Tulane School of Law in 1994, Louis Gertler has been practicing law for 30 years, primarily in the areas of personal injury and products liability. Over the course of his career, he has successfully handled several mesothelioma cases, including trying one case to a favorable jury verdict. He worked in the early 2000's on the *Scott v. American Tobacco Company* class action lawsuit as a member of the Plaintiffs' Class Litigation Committee. He also successfully handled numerous consumer product liability cases, including actions against manufacturers of high-speed blenders, pressure cookers and aluminum ladders. He has been named a "Best Lawyer" in the area of product liability law.

Helen Babin is a 1993 graduate of the Tulane School of Law with a concentration in environmental law. Her 30-year career includes extensive federal and state trial and appellate experience in a broad spectrum of personal injury and product liability practice. In one, the trial resulted in a federal judgment against a heart transplant surgeon and settlement with the manufacturer of a defective artificial heart. She represents clients in product liability and toxic tort

cases against Zimmer/Biomet, Exactech, Depuy, Johnson & Johnson and its subsidiaries. Her experience in handling asbestos exposure cases is well known. She is a "Best Lawyer" in product liability. She is the past president of the American Board of Trial Advocates (ABOTA), Louisiana chapter.

## CONCLUSION

Unquestionably, the Intervenors, Louis L. Gertler, Helen H. Babin, and the Gertler Law Firm, are entitled to 50% of the attorney fee, or the percentage/amount the Court deems appropriate, but no less than 30% of the fee.

**GERTLER LAW FIRM, L.L.P.**

/s/ HELEN H BABIN
LOUIS L. GERTLER #23091
HELEN H. BABIN #22730
935 Gravier Street, Suite 1900
New Orleans, LA 70112
Telephone: (504) 581-6411
Facsimile: (504) 581-6568
Email: hbabin@gertlerfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document has been served upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ HELEN H. BABIN
HELEN H. BABIN