**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHRISTINE L. COLLIER and DENNIS COLLIER**<br>Plaintiff,<br>VERSUS<br>**ETHICON Inc. and JOHNSON AND JOHNSON**<br>Defendants. | **Civil Action No.: 2:22-cv-00168**<br>**Judge: Eldon E. Fallon**<br>**Magistrate Judge: Michael B. North** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPORTION ATTORNEY FEES AND TO DEPOSIT FEES INTO THE REGISTRY OF THE COURT**

**INTRODUCTION**

The Plaintiffs and their current counsel resort to vitriolic, disparaging remarks, untrue and misleading statements, and bloated timesheets to assert a claim for an unfair portion of the attorney fees in this case.

At the time of discharge, the Plaintiffs offered no cause, other than being "unhappy". Co-counsel Robin Blair refused to offer a reason at the time. It was not until the Intervenors sought to be fairly paid for the legal services rendered that Ms. Blair finally offered a "cause," responding with a caustic personal attack. But she also admitted *she advised* the Plaintiffs to discharge the Intervenors, likely after meeting with Dominic Gianna, who enrolled in the case just two days later.

The record reflects the Intervenors were strong advocates for the Colliers for fifteen months. Ms. Blair was a difficult person with whom to collaborate at times, but the occasional difficulty did not interfere with the handling and progression of the case and the excellent representation by the Intervenors.

Ms. Blair claims to have had a negative relationship with Ms. Babin, which she never expressed at any time during the fifteen months that she was co-counsel. She admits in her Declaration that this negative relationship resulted in her advising the Colliers to terminate the Gertler Law Firm as their counsel.

While the Intervenors were cautious not to divulge confidential matters, the Plaintiffs, and their counsel, have freely waived confidentiality. Incredibly, national defense counsel *testified* to two dubious reasons for settlement:1) the Ethicon defendants were afraid of a motion to compel, and 2) national counsel was impressed with Dominic Gianna's credentials. And yet, neither the Gianna/Blair team nor defense counsel will agree to a confidentiality agreement with the Intervenors to divulge the amount of the settlement.

**THE DECLARATIONS**

***The Intervenors***

Attached as **Ex. E** and **Ex. F** are the Declarations of Helen Hairston Babin and Louis L. Gertler, for the Intervenors. The Declarations are devoid of insulting, bombastic rhetoric. Rather, they detail the co-counsel agreement with Robin Blair, the separation of tasks, and the education, training and experience of the Gertler attorneys, including their expertise in product liability law.

***The Opposing Declarations***

Dennis Collier submitted a Declaration based entirely upon what he was told to him by Ms. Blair. As part of the co-counsel agreement, Blair retained direct and controlling communications with the Colliers. Robin Blair insisted that neither Louis Gertler nor Helen Babin speak directly with the Colliers unless she was included in the conversation. The Intervenors never spoke directly to Dennis Collier. Everything pertinent to his consortium claim was communicated by Robin Blair to Louis Gertler and Helen Babin.

In fact, Louis Gertler and Helen Babin were only allowed to speak directly to Christine Collier twice, the initial meeting, and a later phone conference on quantum values. During the phone conference, Ms. Collier was told that, because it was early in the case, an open-ended quantum listing would be best for the initial disclosures, to be amended as the case progressed. She agreed, as did Robin Blair. We don't know what Robin Blair further communicated to Mrs. Collier.

The Gianna declaration and timesheet reference five individuals performing FDA "Maude report" research. That is a perfect example of the bloating of the Gianna timesheets. The Intervenors performed the FDA "Maude report" research on this stapler prior to filing suit. It certainly can be time-consuming and tedious. Nonetheless, five people conducting the same research is ludicrous. Gianna's bloated timesheets reflect hours of work on jury charges several months before the trial. It stretches credulity that it was necessary to prepare jury charges several months prior to trial and when still engaged in discovery disputes.

In his declaration, Dominic Gianna boasts of developing the "strategy "of the case, which, according to the record, included two trial continuances, a six-month delay in the issuance of 30(B)(6) Notices, and a dizzying merry-go-round of motions to compel. The cost sheet attached to the Gianna timesheets does not reflect payment to the two experts Gianna claims to have retained, the warnings expert, and a Life Plan expert. The idea that an expert will work without a retainer is specious, at best.

Equally as specious is the Declaration submitted by James Murdica. Murdica is the chairman of the product liability and mass tort practice at Barnes and Thornburg. He seems to be an extremely well-credentialed attorney at a large law firm. It is implausible that Murdica or

Ethicon would be so threatened by Dominic Gianna's credentials or a pending motion to compel that it would be cause to settle the case.

The record reflects what is more likely the reason. Neither the defendants nor the plaintiffs were ready, or even near ready, for trial. Corporate representatives had not been deposed. Expert reports had not been tendered, other than Dr. Jensen's preliminary report. There were no dispositive motions in the case after the Intervenors' success of the two motions to dismiss.

Moreover, Robin Blair's declaration is insulting and fictionalized. The best comment is no comment. Rather, the intervenors defer to their Declarations and to the record of this case.

## ARGUMENT

Is there cause in this case? There is no evidence that the Intervenors violated any ethical or professional standards. A perceived conflict between co-counsel is not cause for discharge, especially given that – according to her Declaration – Ms. Blair initiated the termination by the Colliers based upon the perceived conflict.

In *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1979), the Louisiana Supreme Court, on rehearing, after considering the nature and social utility of the contingency fee contract concluded that "only one contingency fee should be paid by the client" where the attorney is discharged without cause prior to the completion of the service he agreed to perform upon execution of a contingency fee contract. For the court, Justice Calogero explained:

> Considering the peculiar nature of the contingency fee contract, its social importance, and its potential for abuse as well, in light of our duty to enforce the Disciplinary Rules, we conclude that only one contingency fee should be paid by the client[.] [T]he amount of the fee [is] to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors set forth in the Code of Professional Responsibility.... Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors.

*Saucier*, 373 So.2d at 118.

The proportionate services are to be determined according to the factors contained in Rule

1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved, and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

As discussed above, there is no real cause for the termination of the Gertler Law Firm. However, should the Court find cause, then Intervenors assert that based upon a *Saucier/quantum meruit* analysis, the Intervenors are entitled to minimally 30% of the fee. They are knowledgeable and experienced product liability litigators. The work was timely. Substantial investigation and research were performed. The Intervenors were successful in the only dispositive motions argued in this case. They retained and conferred with the liability expert and obtained key document production from the defendants.

In *O'Rourke v. Cairns,* 95-3054 (La. 11/25/96), 683 So. 2d 697, 703-04, the Louisiana Supreme Court addressed the fee of an attorney who had been discharged *with cause*, concluding:

> "*Saucier* did not alter the rule that counsel discharged for cause are to be compensated on a *quantum meruit* basis. In the situation of counsel dismissed for cause by the client in the contingency fee context, [however,] *quantum meruit* cannot be limited merely to an hourly rate calculation. [ ] "*[Q]uantum meruit*

> involves "more than simply the hours spent.... It involves the ultimate results obtained as well as the particular benefit to the case derived for each unit of time devoted to the case. *Smith*., 313 So.2d at 378. A calculation based on hours alone is a bright-line rule which fails to consider the unique character of the contingency fee contract, including risks not encountered in hourly or fixed fee agreements, which Louisiana courts have recognized for many years. Therefore, we find that the lower courts erred in confining the *quantum meruit* analysis only to the actual hours spent by discharged counsel in this case.
>
> We therefore hold that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation. This rule serves to confine client exposure to no more than one contingency fee in both with and without cause situations. Furthermore, it allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause."

## CONCLUSION

The Intervenors, Louis L. Gertler, Helen H. Babin, and the Gertler Law Firm, are entitled to 50% of the attorney fee, or the percentage/amount the Court deems appropriate, but no less than 30% of the fee.

**GERTLER LAW FIRM, L.L.P.**

_/s/ HELEN H BABIN_____
LOUIS L. GERTLER #23091
HELEN H. BABIN #22730
935 Gravier Street, Suite 1900
New Orleans, LA 70112
Telephone: (504) 581-6411
Facsimile: (504) 581-6568
Email: lgertler@gertlerfirm.com
hbabin@gertlerfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document has been served upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ HELEN H. BABIN
HELEN H. BABIN